IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STARSKY CREAMER, #B55546, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 17-cv-00408-JPG ) |
| FAYETTE COUNTY HOSPITAL and CHARLES SIMS, | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Starsky Creamer, an inmate who is currently confined at Vandalia Correctional Center ("Vandalia"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Fayette County Hospital and Doctor Charles Sims. According to the Complaint, Plaintiff received inadequate medical care for internal bleeding on March 15 and 16, 2017. (Doc. 1, pp. 5-9). He now sues both defendants for exhibiting deliberate indifference to his serious medical condition under the Eighth Amendment and for negligence under Illinois state law. (Doc. 1, pp. 5-7). Plaintiff seeks monetary damages. (Doc. 1, pp. 7-9).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint does not survive preliminary review under this standard and shall therefore be dismissed.

## **Complaint**

Plaintiff's claims arise from inadequate medical care he allegedly received from Doctor Charles Sims at Fayette County Hospital on March 15 and 16, 2017. (Doc. 1, pp. 5-7). On March 15, Plaintiff began feeling sick while resting in his cell at Vandalia. (Doc. 1, p. 5). When he stood up and tried to walk to the bathroom, Plaintiff began vomiting blood. *Id*. He asked another inmate to summon Officer Dothager. *Id*. When the officer arrived and observed the blood in Plaintiff's cell, he contacted the prison's health care unit ("HCU"). *Id*. Plaintiff was immediately transported to the HCU for treatment. *Id*.

Doctors Shaw and Santos, two prison physicians, agreed that Plaintiff required further treatment at a hospital. (Doc. 1, p. 5). He was taken without delay to Fayette County Hospital's Emergency Department. *Id*. There, Doctor Sims explained that he was going to "stick a tube down [Plaintiff's] throat to suck [the] fluids out [of his] stomach and see if there was blood." *Id*.

No blood was found during the procedure. *Id*. Doctor Sims told Plaintiff that "nothing was wrong" and he "was clear" to return to the prison. (Doc. 1, p. 6). Plaintiff insisted that he did not feel well and asked to stay at the hospital. *Id*. His request was denied, and Plaintiff was taken back to the prison where he was monitored overnight in the infirmary. *Id*.

The prison nurses sent Plaintiff back to his cell the following day. (Doc. 1, p. 6). Soon thereafter, he began feeling weak and nauseas. *Id*. Plaintiff asked another inmate for a trash bag and began vomiting blood into it. *Id*. The inmate contacted Officer Burrows, who called the HCU to report the situation to the nurses. *Id*. Too weak to walk, Plaintiff was transported in a van to the prison's HCU. *Id*. When the nurses observed the blood, they immediately called for an ambulance. *Id*.

Plaintiff was taken to Fayette County Hospital, where Doctor Sims again met with him. (Doc. 1, p. 7). The doctor ordered the same procedure, even after the paramedics assured Doctor Sims that they witnessed Plaintiff vomit blood. *Id*. While discussing the matter, Plaintiff vomited two more liters of blood in the doctor's presence. *Id*. He lost so much blood that Doctor Sims ordered his immediate transfer by air to Memorial Hospital. *Id*. During the flight, Plaintiff lost consciousness. (Doc. 1, pp. 7-8).

At Memorial Hospital, he was diagnosed with esophageal varices[1] requiring surgical repair. (Doc. 1, p. 8; Doc. 1-1, 1-2, 1-3). During surgery, they "lost [him] again" and had to perform a blood transfusion. (Doc. 1, p. 8). Surgery was ultimately successful. *Id*. However,

---

[1] This medical condition is characterized by abnormal, enlarged veins in the esophagus. Esophageal varices develop when normal blood flow to the liver is blocked by a clot or scar tissue in the liver. Blood is diverted from the area of the blockage to smaller blood vessels that are not designed to carry large volumes of blood. The smaller vessels can leak or rupture, resulting in life-threatening bleeding. *See* http://www.mayoclinic.org/diseases-conditions/esophageal-varices/home/ovc-20206457 (last visited July 7, 2017).

3

Plaintiff sues Fayette County Hospital and Doctor Sims for responding to his medical needs with deliberate indifference and/or negligence. *Id*. Plaintiff seeks monetary damages. *Id*.

**Discussion**

To facilitate the orderly management of future proceedings in this case and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint into the following enumerated counts:

> **Count 1 -** Defendants exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment when they failed to properly diagnose and adequately treat his esophageal varices on March 15 and 16, 2017.
>
> **Count 2 -** Defendants were negligent in their care and treatment of Plaintiff on March 15 and 16, 2017, in violation of Illinois state law.

As discussed in more detail below, Count 1 fails to state a claim upon which relief may be granted and shall therefore be dismissed with prejudice against both defendants. The Court declines to exercise supplemental jurisdiction over the state law claim in Count 2, and it shall be dismissed without prejudice to Plaintiff pursuing relief in Illinois state court.

**Count 1**

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law violated a right secured by the Constitution or laws of the United States. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009) (citing *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Plaintiff asserts a claim against the defendants under the Eighth Amendment to the United States Constitution, which protects prisoners from cruel and unusual punishment. *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Deliberate indifference to serious medical needs of prisoners constitutes cruel and unusual punishment.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). Therefore, a prisoner who seeks to bring an Eighth Amendment claim based on the denial of medical care must show that a state actor exhibited deliberate indifference to his serious medical condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

In the Complaint, Plaintiff does not identify a "state actor" or anyone who was acting "under color of state law" as a defendant. He mentions several in his statement of claim, including Officer Dothager, Officer Burrows, Doctor Shaw, Doctor Santos, and the HCU nurses, all of whom he encountered at Vandalia. (Doc. 1, pp. 5-9). However, these individuals are not named as defendants in the caption of the Complaint. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). Plaintiff also asserts no claims against these individuals. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. Accordingly, all claims arising from the conduct of Officer Dothager, Officer Burrows, Doctor Shaw, Doctor Santos, and the HCU nurses are considered dismissed without prejudice from this action.

The only defendants who are named in the Complaint are Fayette County Hospital and Doctor Sims. Neither defendant qualifies as a state actor who is subject to suit under § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). When a plaintiff sues a defendant who is not a government official or employee under § 1983, he "must show that that private entity acted under the color of state law." *Rodriguez*, 577 F.3d at 822-23. This requirement "sets the line of demarcation between those matters that are properly federal and those matters

that must be left to the remedies of state tort law." *Id.* (*citing Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50; *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349-51 (1974)).

The Supreme Court and Seventh Circuit have offered district courts guidance in determining when nongovernmental health care providers that serve prisoners qualify as state actors. *Rodriguez*, 577 F.3d at 822-29. The analysis turns on the particular function of the medical provider "in the fulfillment of the state's obligation to provide health care to incarcerated persons." *Id.* at 825. Under the public function test, district courts must consider the relationship between the state, the health care provider, and the prisoner. *Id.* at 826.

Plaintiff squarely addresses that relationship in his Complaint. (Doc. 1, p. 4). There, he states, "Fayette County Hospital ha[s] nothing to do with the Department of Corrections." *Id*. The Seventh Circuit describes a similar relationship between a prisoner, a hospital, and an emergency room doctor:

> [P]rivate organizations and their employees that have only an incidental and transitory relationship with the state's penal system usually cannot be said to have accepted, voluntarily, the responsibility of acting for the state and assuming the state's responsibility for incarcerated persons. For instance, an emergency medical system that has a preexisting obligation to serve all persons who present themselves for emergency treatment hardly can be said to have entered into a specific voluntary undertaking to assume the state's special responsibility to incarcerated persons. *See* Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd *et seq*. Rather, it has undertaken to provide a specific service, emergency medical care, to *all* who need those services. The fact that it does not, and cannot, discriminate against incarcerated individuals does not mean that it has agreed to step into the shoes of the state and assume the state's responsibility toward these persons. It has not "assume[d] an obligation to the [penological] mission that the State, through the [prison], attempts to achieve.". . . . In these circumstances, matters of professional judgment do in fact predominate over the achievement of state objectives.

*Rodriguez*, 577 F.3d at 827-28 (internal quotations and citations omitted). In the Complaint, Plaintiff describes nothing more than an incidental and transitory relationship with Doctor Sims

and Fayette County Hospital. His referral to the emergency department for evaluation on March 15 and 16 does not transform either defendant into a "state actor" for purposes of § 1983.

Further, the Complaint articulates no viable Eighth Amendment claim against Fayette County Hospital or Doctor Sims. Plaintiff disagreed with Doctor Sims' initial decision regarding diagnosis and treatment. However, the mere disagreement with a physician's chosen course of medical treatment does not amount to deliberate indifference under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). At most, Plaintiff states a claim of medical negligence under Illinois state law, and inadvertent error, negligence, gross negligence, or even ordinary malpractice does not give rise to an Eighth Amendment claim. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008); *accord Berry*, 604 F.3d at 440 ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence, does not violate the Constitution."). Under the circumstances, the Eighth Amendment claim in Count 1 does not survive preliminary review and shall be dismissed with prejudice against both defendants for failure to state a claim upon which relief may be granted.

**Count 2**

Absent a viable federal constitutional claim, the Court declines to exercise supplemental jurisdiction over the state negligence claim against the same defendants in Count 2. *See* 28 U.S.C. § 1367(c)(3). "[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial. Indeed, this presumption counsels that the better practice is for district courts to state explicitly their reasons for taking the opposite course." *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Count 2 shall be dismissed without prejudice to Plaintiff pursuing relief in Illinois state court.

Before pursuing a claim in state court, Plaintiff should review the statutory requirements for bringing a claim of negligence in Illinois. *See* 735 ILCS § 5/2-622. Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); (2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or (3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP. STAT. § 5/2-622(a) (West 2017).[1] A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. § 5/2-622(b). Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g). Plaintiff should keep these requirements in mind when choosing his future course of action.

---

[2] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n. 1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. § 5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. § 5/2-622 (West 2013).

**Pending Motion**

The Motion for Appointment of Counsel (Doc. 3) is **DENIED**. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc*., 706 F.3d 864, 866–67 (7th Cir. 2013).

When considering a request for counsel, the Court must first determine whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case -- factually and legally -- exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff has not demonstrated reasonable efforts to secure counsel on his own. In his motion, Plaintiff discloses a single law office that he contacted for assistance before filing his motion. (Doc. 3, p. 1). He indicates that "[t]hey said they would contact me but never did." *Id*. Plaintiff did not contact any other attorney by phone, mail, or otherwise. In addition, he has demonstrated a clear ability to articulate his claims, prepare pleadings, and meet court deadlines, despite his limited formal education. Plaintiff discloses no other impediments to proceeding *pro*

*se*. Given the lack of effort to find counsel on his own and his demonstrated ability to represent himself, the Court deems it appropriate to deny Plaintiff's motion at this time.

## Disposition

**IT IS HEREBY ORDERED** that the Complaint (Doc. 1) and this action are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Eighth Amendment claim in **COUNT 1** is **DISMISSED** with prejudice against both defendants for failure to state a claim upon which relief may be granted, and the Illinois medical negligence claim in **COUNT 2** is **DISMISSED** without prejudice against both defendants because the Court declines to exercise supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367(c)(3). This Order does not preclude Plaintiff from pursuing his medical negligence claim in Illinois state court.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011) (noting that a "dismissal is a dismissal, and provided that it is on one of the grounds specified in [§] 1915(g) it counts as a strike, . . . , whether or not it's with prejudice").

If Plaintiff wishes to appeal this Order, he may file a Notice of Appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockish*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4).

A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: July 10, 2017**

*s/J. Phil Gilbert*
**U.S. District Judge**